IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JEFFREY N. SELF, )
)
Plaintiff, ) Cause No. 1:14-cv-00618
)
v. )
)
BNSF RAILWAY COMPANY, )
)
Defendant. )

## COMPLAINT

### COUNT I

COMES NOW Plaintiff, Jeffrey N. Self, by and through his attorneys, and brings this action for legal and equitable relief to redress the injuries done to him by Defendant, BNSF Railway Company (hereinafter referred to as "BNSF"). In support thereof, Plaintiff states as follows:

### JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12117, which incorporates by reference §706 of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e-5.

2. The unlawful employment practices complained of herein were committed within the State of Texas.

3. Plaintiff Jeffrey N. Self is a citizen of the United States, a citizen of the State of Texas, and a resident of Austin Texas, living at 701 Woodward, Apt. 314, Austin, TX  78704

1

4. Defendant BNSF is a duly organized and existing corporation, with registered agents in Texas, and, at all times relevant to this action, was and is doing business in the Western District of Texas.

5. Defendant BNSF is a "person" within the meaning of §101(7) of the ADA, 42 U.S.C. §12111(7), and §701 of Title VII, 42 U.S.C. §2000-e.

6. Defendant BNSF is engaged in an industry that affects commerce within the meaning of §107(7) of the ADA, 42 U.S.C. §12111(7), and §702 of the Civil Rights Act of 1964, 42 U.S.C. §2000-e.

7. Defendant BNSF employs 15 or more employees and is an "employer" within the meaning of §101(5)(A) of the ADA, 42 U.S.C. §12111(5)(A).

## ADMINISTRATIVE PROCEDURES

8. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission.

9. Thereafter, on April 10, 2014, Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission. Plaintiff has commenced this action within ninety (90) days of receipt thereof.

## FACTUAL ALLEGATIONS

10. Plaintiff commenced his employment with Defendant BNSF's predecessor, the Atchison, Topeka & Santa Fe Railway Company ("ATSF"), on or about June 21, 1994 as a Journeyman Carman at ATSF's facility at Newton, Kansas.

11. In January of 1995, Plaintiff transferred to Defendant BNSF's facility in Temple, Texas and Plaintiff has been employed as a Journeyman Carman at that facility, with seniority

under the union agreement at that facility, and worked in the capacity of a Journeyman Carman at that facility, except for the absences described below for medical treatment, until Defendant BNSF removed Plaintiff from service and prohibited him from returning to service during May of 2013.

12. As an Journeyman Carman at Defendant's Temple, Texas facility, Plaintiff exercised his union seniority to bid on and obtain the position of a carman inspector on the third (11:00 PM - 7:00 AM) shift at Defendant BNSF's Temple facility.

13. As a Journeyman Carman working as a car inspector on the third shift at Defendant BNSF's Temple, Texas facility, Plaintiff's essential job duties involved performing inspections of freight trains arriving at (inbound trains) and/or departing from (outbound trains) the Defendant BNSF's Temple Train Yard. Specifically, these essential car inspection duties included the following:

(a) Performing visual mechanical inspections of the freight cars in inbound and outbound trains to detect, and either repair or report, mechanical defects which inspections were performed either by walking the length of the train(s) or by riding on motorized all terrain vehicles;

(b) Bleeding off the air brake pressure in inbound freight car air brake systems by manually pulling on air brake release valves;

(c) Manually coupling quick connect air brake hose couplings on outbound freight trains;

(d) Performing minor running repairs on freight cars that can be performed without removing freight cars from the train (i.e., replacing freight car brake shoes, replacing air brake hoses, replacing hose connection gaskets, straightening safety appliances, etc.);

(e) Closing open freight car doors;

(f) Manually releasing freight car hand brakes;

(g) Performing air brake tests on departing freight trains;

3

    (h)    Preparing brief written reports/entering data on computer terminals relating to the above; and

    (i)    Performing other work incidental to and/or associated with the above.

14.    Throughout his employment with Defendant as a Journeyman Carman and a car inspector at Temple Texas, Plaintiff performed his duties in a satisfactory manner and performed at or above the levels expected by Defendant.

15.    On or about June 30, 2009, Plaintiff, while performing an inspection of an outbound train, fell while dismounting an ATV and sustained injuries to his left knee, including injuries that were later diagnosed as a tear of the posterior horn of the medial meniscus and developed Grade 1 chondral changes of the medial femoral condyle of the right knee.

16.    Plaintiff reported left knee injuries to Defendant BNSF by completing and submitting a written BNSF Railway Employee Personal Injury Occupational Report to Defendant BNSF on about about June 30, 2009.  **In spite of the traumatic left knee injuries sustained on** June 30, 2009, Plaintiff continued to perform his car inspector duties to the satisfaction of defendant BNSF up to October 6, 2009.

17.    Defendant BNSF also acquired knowledge and information about Plaintiff's medical condition and capacity to work by securing medical authorizations executed by Plaintiff which permitted Defendant BNSF direct access to Plaintiff's medical records, acquiring information directly from Plaintiff, and assigning personnel in Defendant BNSF's Medical Department and Defendant BNSF's retained service MCMC (Managing Care/Managing Claims) responsibility for gathering and analyzing information about Plaintiff's medical condition, physical state, and capacity to work.

4

18. As a consequence of said injuries, Plaintiff ultimately requested and was placed on a medical leave of absence and underwent arthroscopic surgery performed by Dr. Derek Lichota at Scott & White Hospital on October 6, 2009 including a partial medial meniscectomy performed by debriding the medial meniscus to a stable base.

19. After the arthroscopic surgery, that both Plaintiff and his surgeon, Dr. Lichota, considered successful, Plaintiff missed approximately 78 days from work as a result of said injury, underwent physical therapy, including work simulation, and returned to work with Defendant BNSF during December of 2009 in a light duty/restricted duty capacity for approximately 15 days and then returned to work on unrestricted, full duty car inspection work on or about January 6, 2010 and, thereafter, satisfactorily performed the essential functions of his duties as a Journeyman Carman performing car inspector duties for Defendant BNSF on the third shift at Temple Texas.

20. In about October of 2011, Plaintiff sought medical care and treatment for diminished left hand grip strength, left arm pain and radiculopathy, saw physicians, underwent diagnostic testing including cervical spine x-rays and cervical spine MRIs, was diagnosed with cervical degenerative joint disease and cervical disc displacement resulting in pressure on the left C7 nerve root. Plaintiff reported said injuries/conditions to Defendant BNSF by completing and submitting a written BNSF Railway Employee Personal Injury Occupational Report to Defendant BNSF on about November 1, 2011, and underwent prescribed treatment including traction, physical therapy, medications and conservative treatment modalities, which did not result in substantial or significant absence from work, and on April 4, 2012, Plaintiff was released from treatment and care to return on an as needed basis.

21. During 2011/2012, defendant BNSF changed the methods and procedures by which car inspection was performed at BNSF's Temple, Texas Train Yard by reducing and/or nearly eliminating the use of ATVs by car inspectors. As a direct consequence of defendant BNSF's change in this method and procedure, Plaintiff's car inspection duties required substantial additional walking on loose, rough and uneven railroad ballast at the Temple Train Yard in order for Plaintiff to perform duties that had previously been performed by riding on ATVs.

22. Following defendant BNSF's change in the methods and procedures described above, by May of 2012, Plaintiff began experiencing right knee pain arising from the additional walking on rough, loose and unstable ballast that was required at the Temple Train Yard in connection with Plaintiff's car inspection duties. Thereafter, Plaintiff sought treatment for his right knee complaints and injuries in November of 2012, and Plaintiff reported said injuries/conditions to Defendant BNSF by completing and submitting a written BNSF Railway Employee Personal Injury Occupational Report to Defendant BNSF concerning his right knee injuries as an occupational, on-the-job injury on about November 29, 2012..

23. Plaintiff's right knee injuries were diagnosed as tears of the medial meniscus and Grade IV chondral lesion on the medial femoral condyle by Dr. Derek Lichota and on about December 10, 2012, Plaintiff underwent right knee surgery performed by Dr. Derek Lichota which included right knee partial medial meniscectomy and abrasion chondroplasty of the right knee.

24. Following said surgery, plaintiff underwent a course of treatment, and was instructed, by Dr. Lichota, to remain off work until he saw Dr. Lichota on April 3, 2013, and he

was then released by Dr. Lichota to return to work on April 8, 2013 on full duty status without restrictions.

25.   After Plaintiff had been given a complete and unconditional return to work release by Dr. Lichota, and after plaintiff had returned to work, defendant began to make discriminatory demands and take discriminatory action towards plaintiff on account of his injuries and disability, including, but not limited to, the following:

   (a)   Defendant BNSF demanded, and persisted in demanding, that Plaintiff wear leg braces on both legs during the entire time that he was on BNSF property, even when sitting in the break area, when working on the computer, and when not performing duties requiring walking or standing. Defendant BNSF further persisted in demanding that Plaintiff wear the leg braces, which were painful and uncomfortable after prolonged wear, at all times even after Plaintiff's treating physician and surgeon, Dr. Lichota, had expressly recommended, prescribed, informed, and notified those involved, on or about May 29, 2013, that knee braces were not necessary for office or desk work and may be removed.

   (b)   Defendant BNSF demanded that Plaintiff provide medical information about sleep apnea, undergo sleep apnea testing, and pay for sleep apnea testing that had not been recommended or prescribed by any of Plaintiff's treating physicians, even though Plaintiff had successfully and satisfactorily worked for defendant for more than 5 years after a diagnosis of sleep apnea in about February of 2008.

   (c)   Defendant BNSF refused Plaintiff's Requests for reasonable accommodations.

   (d)   Defendant BNSF used its power to and timed its pulling of plaintiff out of service for alleged medical reasons after plaintiff had finally been able to and did exercise his seniority to bid on a job vacancy for a carman that had arisen and for which plaintiff had sufficient seniority to bid and be awarded the position and which position would place significantly less physical demand(s) on plaintiff's knees so as to prevent plaintiff from being awarded the position that he bid on and otherwise would have acquired through his seniority.

   (e)   Defendant BNSF engaged in other conduct that constituted discrimination on account of and retaliation for Plaintiff's disabilities, plaintiff's requests for accommodation, and Plaintiff's efforts to continue working for defendant with his disabilities.

(f)     Defendant BNSF discriminated against and retaliated against Plaintiff by removing Plaintiff out of service.

26. Plaintiff was removed from service by Defendant BNSF and Defendant BNSF refused to reasonably accommodate Plaintiff so he could continue working; Defendant BNSF frustrated, hampered and interfered with Plaintiff's efforts to use Plaintiff's seniority to bid to a position that would accommodate Plaintiff's physical disability; Defendant BNSF also refused to return Plaintiff back to service; and Defendant BNSF also delayed and refused to respond to Plaintiff's requests about returning to service so as to impair plaintiff's ability to effectively participate in making medical judgments about what medical treatment would permit plaintiff to return to work.

27. Plaintiff is an individual with a "disability" as that term is defined in §3(2) of the ADA, 42 U.S.C. §12102 and is physically impaired in one or more major life functions. More specifically because of his injuries mentioned above to his knees and to his neck, Plaintiff has:

(a)     A physical impairment that substantially limits one or more of the Plaintiff's major life activities; and

(b)     A record of such an impairment; and

(c)     Is regarded by Defendant and its decision makers as having such an impairment.

28. Plaintiff is a "qualified individual with a disability" within the meaning of §101(8) of the ADA, 42 U.S.C. §12111(8), in that the Plaintiff is an individual with a disability who, with or without reasonable accommodation, at the time of the discrimination and retaliation was capable of performing the essential functions of his job as a Journeyman Carman for Defendant.

8

29. At all times relevant herein, Defendant knew of Plaintiff's disability and that an accommodation was necessary to allow Plaintiff to perform his job duties as an Journeyman Carman.

30. At all times relevant herein, Plaintiff remained capable of performing the essential functions of his position as a Journeyman Carman with reasonable accommodation.

31. Defendant's denial of employment accommodations to Plaintiff is a violation of §102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability or perceived disability, in that Defendant refused to continue and/or provide Plaintiff with any reasonable accommodation and refused to allow Plaintiff to return to service in a position which would adequately suit Plaintiff's current abilities in the workplace.

32. Defendant BNSF, and its decision makers, perceived Plaintiff as being disabled and treated Plaintiff discriminatorily and in violation of the Act and its regulations thereby damaging Plaintiff and causing Plaintiff to sustain losses.

33. As a direct and proximate result of Defendant's aforementioned conduct, Plaintiff has lost compensation and benefits of employment.

34. As a direct and proximate result of Defendant's aforementioned conduct, Plaintiff has suffered and will continue to suffer emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-monetary losses.

35. Defendant's conduct was undertaken with malice and reckless indifference to Plaintiff's rights.

36. Plaintiff has incurred and will continue to incur attorney's fees and costs in connection with this matter.

9

37.     Plaintiff requests Jury Trial on those issues which are properly tried to a Jury under the Act and under the Fifth and Seventh Amendments to the United States Constitution.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant for lost wages and other benefits of employment, for compensatory damages, punitive damages, declaratory relief, appropriate injunctive relief, front pay, prejudgment interest, attorney's fees and costs, and for such additional relief as this Court deems appropriate.

LAW OFFICES OF PRICE AINSWORTH, P.C.

Price Ainsworth
Texas Bar No. 00950300
48 E. Avenue
Austin, TX 78701
Phone: 512/474-1661
Fax: 512/472-9157
E-mail: price@ainsworth-law.com

LAW OFFICES OF C. MARSHALL FRIEDMAN P.C.
C. Marshall Friedman
Missouri Bar No. 19131
(Subject to Pro Hac Vice)
Kenneth E. Rudd
Missouri Bar No. 27892
(Subject to Pro Hac Vice)
1010 Market Street, 13th Floor
St. Louis, MO 63101
Telephone: 314/621-8400
Fax: 314/621-8843
E-mail:ker@friedman-law.com

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Jeffrey N. Self

**DEFENDANTS**
BNSF Railway Company

(b) County of Residence of First Listed Plaintiff: Travis
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Price Ainsworth, Law Offices of Price Ainsworth, P.C., 48 East Ave, Austin, Texas 78701

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC Sec. 12117, 42 USC 2000e-5

Brief description of cause:
Unlawful employment practices in violation of the Americans with Disabilities Act

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE: 07/03/2014

SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT #  _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____